**UNITED STATES of America, Plaintiff,**

v.

**COLORADO & EASTERN RAILROAD,
Defendant.**

No. 89–C–1786.

United States District Court,
D. Colorado.

May 27, 1993.

Stephen Taylor, Asst. U.S. Atty., for plaintiff.

Timothy Gablehouse, Wayne Schroeder, Denver, CO, for defendant.

## AMENDED ORDER

CARRIGAN, District Judge.

In October 1989, the United States filed suit under the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. § 9601 *et seq.* against a number of defendants, including Farmland Industries, Inc. (Farmland) and

Colorado & Eastern Railroad Company (CERC) to recover the costs it incurred cleaning up the Woodbury Chemical Company Superfund Site (the site). Farmland filed claims under state and federal law against co-defendant CERC and third party defendants Great Northern Transportation Company (GNTC) and Gary W. Flanders (collectively the CERC parties).[1]

Farmland's claims against the CERC parties are as follows: Cost recovery under CERCLA (first claim); contribution under CERCLA (second claim); liability for CERC debts under CERCLA (third claim); common law liability for CERC debts (fourth claim); negligence (fifth claim); interference with cleanup activities (sixth claim), and vicarious liability (seventh claim).

The CERC parties moved for summary judgment on Farmland's claims pursuant to Fed.R.Civ.P. 56. Farmland responded by opposing that motion. The CERC parties also moved to dismiss Farmland's state law claims pursuant to Fed.R.Civ.P. 12(b). Farmland responded by opposing that motion. Farmland, in turn, moved for partial summary judgment on the issue of amount and reasonableness of additional cleanup costs it incurred as a result of the alleged conduct of the CERC parties. The CERC parties responded by opposing that motion.

Jurisdiction over Farmland's federal claims is proper pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 9613(b). Jurisdiction over Farmland's state law claims is asserted under the doctrine of pendent jurisdiction. The parties have fully briefed the issues and oral argument would not materially facilitate the decision process.

## I. FACTUAL BACKGROUND.

CERC owns land in and around the cleanup site. Farmland is the corporate successor to a chemical manufacturing plant previously operated at the site. Following initiation of the United States' suit, Farmland and another defendant, McKesson Corporation, entered a partial consent decree with the United States, agreeing to pay $700,000 for re-

sponse costs incurred by the government prior to the decree. Farmland and McKesson also agreed to finance and carry out the remediation work plan and reimburse the government for any future response costs that it might incur.

On April 20, 1992, CERC entered a consent decree with the United States, agreeing to pay $100,000 for past response costs not recovered by the government in earlier settlements.

Farmland's claims against the CERC parties assert that CERC's excavation and soil removal activities, refusal to allow access and other actions increased the clean up costs by $1,439,330. (Manesh aff., p. 2–3). Farmland paid fifty-one percent of the asserted additional cost, or $734,058.30 (id., p. 3), the amount of damages it seeks here.

## II. THE CERC PARTIES' MOTION FOR SUMMARY JUDGMENT.

■■■ Summary judgment is proper if the pleadings, depositions and affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The party opposing a properly supported summary judgment motion may not rest upon the mere allegations of the complaint, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). A factual dispute is material only if, under the governing law, its resolution might affect the action's outcome. A factual dispute is genuine only if a reasonable fact finder could return a verdict for the nonmoving party. *Id.*

■■■ The CERC parties move for summary judgment on all issues of liability arguing that Farmland's claims are barred by the contribution protection provided by 42 U.S.C. § 9613(f)(2), which provides:

"A person who has resolved its liability to the United States or a State in an adminis-

---

1. CERC is a wholly owned subsidiary of GNTC. GNTC was wholly owned by Gary Flanders from July 2, 1986 to September 30, 1991. Evelyn J. Flanders is now the sole shareholder of GNTC.

trative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement."

As an initial matter CERC has not yet paid the $100,000 required by the decree. CERC maintains that this failure is of no consequence here. I disagree.

Paragraph VIII of the consent decree provides in part: "This Court shall retain jurisdiction of this Consent Decree for purposes of ensuring compliance with . . . its terms and conditions." *See Dravo Corp. v. Zuber,* 804 F.Supp. 1182 (D.Neb.1992) (contribution protection is contingent on continued compliance with the terms of the consent decree). The *Dravo* court stated:

> Absent a showing that [the settling defendants] are not now in compliance with the order, and there is none, there is no factual basis upon which one can conclude that [the settling defendants] . . . failed to do something which would have caused a default terminating the contribution bar. *Id.*

Here, there is evidence of a default which would terminate the contribution bar; CERC's failure to pay the $100,000 required under the decree. CERC may not claim protection arising from a decree as to which it is in default.[2]

▬▬▬ Alternatively, even if CERC were not in default, it still could not claim the protection of § 9613(f)(2). The protection contemplated by § 9613(f)(2) covers not just claims for contribution, but claims for response costs that amount to nothing more than claims for contribution. *Dravo,* 804 F.Supp. at 1185. This protection, however, is limited to "matters addressed in the settlement." 42 U.S.C. § 9613(f)(2).

> "The proper inquiry for determining whether a consent decree covers the same subject matter as a contribution claim is a comparison of the 'particular hazardous substances at issue in the settlement, the location of the site in question, the time frame covered by the settlement, and the cost of the cleanup.'" *Akzo Coatings, Inc. v. Aigner Corp.,* 803 F.Supp. 1380, 1385

(N.D.Ind.1992), quoting *United States v. Union Gas Co.,* 743 F.Supp. 1144, 1154 (E.D.Pa.1990). *See also United States v. Pretty Products, Inc.,* 780 F.Supp. 1488, 1494–95, n. 4 (S.D.Ohio 1991).

CERC's consent decree does not contain a section specifically addressing contribution protection. Therefore, the scope of contribution protection must be determined from other portions of the document.

It is clear that Farmland's claims concern the same hazardous substances and site as the consent decree. However, Paragraph IV A of CERC's consent decree states:

> "[P]ayment shall constitute full satisfaction of the United States' claims against CERC for past response costs not recovered pursuant to previously entered consent decrees in this matter with McKesson Corporation, Farmland Industries, Inc. and Maytag Corporation."

The agreement, therefore, may be read as extending only to response costs incurred by the government but not recovered in earlier settlements which would not include the costs Farmland incurred as a result of CERC's alleged conduct. *See Transtech Industries, Inc. v. A & Z Septic Clean,* 798 F.Supp. 1079, 1090 (D.N.J.1992) (contribution protection applies only to claims specifically addressed in the consent decree, not to every possible claim arising out of the same site).

Therefore, it cannot be said that there is no genuine issue of material fact as to the scope of the contribution protection afforded by CERC's consent decree.

## III. *THE CERC PARTIES' MOTION TO DISMISS.*

▬▬▬ The CERC parties challenge this court's jurisdiction over Farmland's pendent state claims. Under the doctrine of pendent jurisdiction, a federal court has discretion to try a plaintiff's state and federal claims in one proceeding if: (1) the federal claim is substantial, (2) both the federal and state claims derive from a common nucleus of operative fact, and (3) the claims are so related

---

**2.** The decree states that the United States is not bound by a covenant not to sue CERC until

timely payment of the $100,000. (Consent decree, ¶ VI C).

that the parties would expect to try them all in one proceeding. *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

However, when "it appears that the state issues substantially predominate, whether in terms of proof, or the scope of issues raised, or the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals." *Gibbs*, 383 U.S. at 726–27, 86 S.Ct. at 1139–40.

■ The CERC parties contend that Farmland's state claims would predominate at trial. I agree.

The evidence involved in state tort claims is vastly different from the proof required to establish CERCLA claims. *Polger v. Republic National Bank*, 709 F.Supp. 204, 210 (D.Colo.1989). In order to establish its claim of negligence, Farmland will have to introduce evidence relating to duty, breach of duty, causation and damages. *Connes v. Molalla Transport System Inc.*, 831 P.2d 1316 (Colo.1992). In addition, questions relating to vicarious liability and piercing the corporate veil will also have to be litigated. This is far different from CERCLA's strict liability scheme. Therefore, if Farmland's state law claims remain for trial, then most of the trial would be devoted to them. Therefore, Farmland's state law claims will be dismissed.

## IV. *FARMLAND'S MOTION FOR PARTIAL SUMMARY JUDGMENT.*

Farmland has moved for partial summary judgment against the CERC parties on the issue of the amount and reasonableness of the additional cleanup costs it incurred.[3]

A party seeking to recover on a claim may at any time move for summary judgment with or without supporting affidavits. Fed. R.Civ.P. 56(a). In support of its motion for summary judgment, Farmland submitted the affidavit of Kamyar N. Manesh, a Senior Environmental and Safety Specialist with Environmental Safety Services, Inc. (ESSI),

the contractor in charge of Farmland's cleanup operations. The affidavit states that additional cleanup cost of $734,058.30 were incurred.

■ The CERC parties have responded in the form of a motion to strike and rely on four arguments. The CERC parties contend that the motion was not timely because it was filed after the February 1, 1993 cutoff date for dispositive motions set by the court on November 3, 1992. However, the original trial date of March 1, 1993, was vacated on February 24, 1993, and trial was reset for June 1, 1993. As a result, Farmland's motion, which was filed on March 10, 1993, came well before trial and gave the CERC parties adequate time to respond. In the absence of any showing of actual prejudice by the CERC parties, the court will consider Farmland's motion.

■ The CERC parties next argue that the affiant is not listed as a witness. The evidentiary materials allowed in a motion for summary judgment are pleadings, depositions, answers to interrogatories, admissions and affidavits. Fed.R.Civ.P. 56(c). There is no requirement that affiants be listed as witnesses for trial. *See* Fed.R.Civ.P. 56(e).

The CERC parties' third argument is that by signing the Pretrial Order, which contains a description of the CERC parties' defenses, Farmland has conceded that there is a genuine issue of material fact. This argument is without merit.

■ Finally, the CERC parties argue that summary judgment would be improper because Farmland will carry the burden at trial. This argument misses the point. What is controlling here is who carries the burden at summary judgment. Here Farmland has submitted a motion for summary judgment properly supported by a factual affidavit. Therefore, under Fed.R.Civ.P. 56(c), the burden has shifted to the CERC parties to come forward with specific facts showing that there is a genuine issue of material fact bringing into question that the proper amount is $734,058.30.

The CERC parties, however, have not submitted any evidence disputing the validity of

---

3. Farmland does not move for summary judgment on the issue of whether those expenses

were consistent with the National Contingency Plan.

the $734,058.30 amount or its reasonableness. That failure is dispositive, requiring the entry of partial summary judgment for Farmland as to the amount of additional cleanup costs it incurred and the reasonableness of those costs.

Accordingly, IT IS ORDERED that:

(1) The CERC parties' motion for summary judgment is denied;

(2) The CERC parties' motion to dismiss is granted;

(3) Farmland's fourth, fifth, sixth and seventh claims, the pendent state claims, are dismissed;

(4) Farmland's motion for partial summary judgment on the issue of the amount and reasonableness of additional cleanup costs it incurred is granted;

(5) The parties and their counsel are ordered to meet and confer prior to trial in a good faith attempt to settle the case without further litigation, expense or delay. The parties shall report to this court in writing immediately after that meeting, stating the results of their settlement negotiations and whether a conference before a Magistrate Judge or some other alternative dispute resolution proceeding would facilitate settlement.