**ADIDAS AMERICA, INC., Plaintiff,**

v.

**NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, Defendant.**

**No. CIV.A. 98–2510–GTV.**

United States District Court, D. Kansas.

May 3, 2000.

Lori R. Schultz, W. Dennis Cross, Morrison & Hecker L.L.P., Kansas City, MO, A. Bradley Bodamer, Morrison & Hecker L.L.P., Overland Park, KS, David T. Alexander, Jesse W. Markham, Jr., Tracy M. Preston, Orrick, Herrington & Sutcliffe, San Francisco, CA, Bruce Keplinger, Timothy S. Davidson, Norris, Keplinger & Herman, L.L.C., Overland Park, KS, Susheela Jayapal, David M. Howitt, Adidas America, Inc., Beaverton, OR, for Adidas America, Inc.

Heather S. Woodson, Stinson, Mag & Fizzell, P.C., Leawood, Michael J. Davis, David E. Everson, Jr., Thomas P. Schult, Stinson, Mag & Fizzell, P.C., Kansas City, MO, Gregory L. Curtner, Miller, Canfield, Paddock & Stone, P.C., Ann Arbor, MI, for National Collegiate Athletic Association.

### *MEMORANDUM AND ORDER*

VANBEBBER, Chief Judge.

Plaintiff Adidas America, Inc. ("Adidas") filed this action for damages and injunctive relief against defendant National Collegiate Athletic Association ("the NCAA") alleging violations of Sections 1 and 2 of the Sherman

Act, 15 U.S.C. §§ 1 and 2, and various state law claims. In its Order dated August 26, 1999 (Doc. 272), the court granted the NCAA's motion for judgment on the pleadings (Doc. 87) pursuant to Fed.R.Civ.P. 12(c). The case is now before the court on Adidas's motion to alter or amend judgment (Doc. 274). For the reasons set forth below, the motion is denied.

### I. Legal Standard

■ A motion to alter or amend judgment pursuant to Fed.R.Civ.P. 59(e) may be granted only if a plaintiff can establish: (1) an intervening change in controlling law; (2) the availability of new evidence that could not have been obtained previously through the exercise of due diligence; or (3) the need to correct clear error or prevent manifest injustice. *Brumark Corp. v. Samson Resources Corp.*, 57 F.3d 941, 948 (10th Cir.1995). "A motion to alter or amend judgment does not permit the losing litigant to rehash arguments previously addressed and rejected or to present new legal theories or facts that could have been raised earlier. The decision whether to grant or deny a Rule 59(e) motion to alter or amend the judgment is committed to a court's sound discretion." *Mansfield v. UMB Bank Kansas*, No. 95–2554–GTV, 1997 WL 457699, at *1 (D.Kan. July 31, 1997) (citing *Brown v. Presbyterian Healthcare Servs.*, 101 F.3d 1324, 1332 (10th Cir.1996)).

### II. Analysis [1]

Adidas argues that, in granting the NCAA's motion for judgment on the pleadings, the court (1) erred in its analysis of Adidas's proposed relevant market, (2) held Adidas to an inappropriately stringent pleading standard, and (3) misconstrued the case law upon which the court based its decision.

■ Adidas argues that the court erred in ruling that Adidas's complaint fails to allege a plausible relevant market because the complaint "includes more detail on [the alleged market] than pleading rules require." The basis for the court's judgment, however, is not the level of detail in the complaint but

the fact that Adidas failed to allege a plausible or legally cognizable relevant market. With respect to the alleged market for the sale of promotional rights, the court concluded that "the allegations in Adidas's complaint fail to define the relevant market in terms of interchangeability and cross-elasticity of demand." Furthermore, the court concluded that the complaint "does not contain factual allegations sufficient to support the conclusory allegation that the NCAA's enforcement of Bylaw 12.5.5 restricts the 'markets for the sale of certain athletic uniforms, related athletic apparel and athletic footwear to consumers in which Adidas competes.'" After reviewing the parties' pleadings, Adidas's complaint, and the court's memorandum and order granting judgment on the pleadings, the court is satisfied that its original conclusion is correct, and that Adidas's complaint fails to allege a plausible relevant market.

Adidas next argues that the court erred by holding it to an inappropriately stringent pleading standard. Pointing to the court's statement that "Adidas fails to explain or even address why other similar forms of advertising" are not reasonably interchangeable with the alleged market for promotional rights, Adidas argues that the court held it to an "inappropriate standard of pleading" by requiring it to provide evidence for its claims rather than merely to allege them. The court made the above statement, however, not to require the proffer of evidence, but rather as support for its conclusion that "the allegations in [Adidas's] complaint fail to define the relevant market in terms of interchangeability and cross-elasticity of demand." The court's decision remains based on Adidas's deficient allegations; and the court analyzed Adidas's complaint according to the well-settled rule that an antitrust plaintiff "must allege sufficient facts to support a cause of action under the antitrust laws." *Full Draw Productions v. Easton Sports, Inc.*, 182 F.3d 745, 755 (10th Cir.1999) (further citation omitted).

Finally, Adidas argues that the court misconstrued the case law upon which its deci-

---

1. Because the court has on two prior occasions discussed the factual background in this case extensively, the court will not do so here. *See* Order dated March 26, 1999 (Doc. 209) and Order dated August 26, 1999 (Doc. 272).

sion is based. Specifically, Adidas argues that *Queen City Pizza, Inc. v. Domino's Pizza, Inc.,* 124 F.3d 430, 436–37 (3d Cir. 1997), does not justify dismissal of Adidas's complaint because the facts in *Queen City* differ from the facts here. The court relied on *Queen City* not for its factual similarity, but for its well-supported antitrust analysis:

> "The outer boundaries of a product market are determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it." Where the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor, the relevant market is legally insufficient and a motion to dismiss may be granted.

124 F.3d at 436 (quoting *Brown Shoe Co. v. U.S.,* 370 U.S. 294, 325, 82 S.Ct. 1502, 8 L.Ed.2d 510 (1962)). The *Queen City* opinion itself does not justify dismissal; rather, the court's application of its principles to Adidas's complaint justifies dismissal. The court denies plaintiff's motion to alter or amend judgment.

■■■ Adidas asks the court to grant it leave to amend its complaint to add a class of all of the NCAA's Member Institutions with John Doe as its class representative, and to attempt to cure the defects in its market definition. Fed.R.Civ.P. 15(a) provides that, after a responsive pleading has been filed, an amended complaint may be filed "only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." "This mandate is to be heeded ... in the absence of any apparent or declared reason—such as undue delay [or] futility of amendment." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). One such reason is the

presumption against amending complaints after judgment has been entered. "[O]nce judgment is entered, the filing of an amended complaint is not permissible until judgment is set aside or vacated pursuant to Fed. R.Civ.P. 59(e) or 60(b)." *Cooper v. Shumway,* 780 F.2d 27, 29 (10th Cir.1985); *see also Seymour v. Thornton,* 79 F.3d 980, 987 (10th Cir.1996); *Schmitt v. Beverly Health and Rehab. Servs., Inc.,* 993 F.Supp. 1354, 1365–66 (D.Kan.1998) ("While the court may have granted plaintiff's motion to amend if it had been brought prior to the entry of judgment, the court finds now that its concerns for finality of judgments and judicial economy militate against allowing plaintiff to amend her complaint.").

The NCAA points out that its motion for judgment on the pleadings "placed Adidas on notice" of deficiencies in the complaint, and that Adidas "made a conscious decision to pursue this strategy." The court agrees. Indeed, Adidas chose to adhere to its original complaint even after the court identified problems with Adidas's case in its Order dated March 26, 1999;[2] and "all the allegations raised in [Adidas's proposed] amended complaint either were or could have been raised in the original complaint." *Cooper,* 780 F.2d at 29. To allow Adidas to amend its complaint now "would enable the liberal amendment policy of Rule 15(a) to be employed in a way that is contrary to the philosophy favoring finality of judgments and the expeditious termination of litigation" and would "render [Rule 59(e) ] meaningless." 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 2d* § 1489 (1990). In light of the court's decision not to alter or amend its judgment, the court denies Adidas's request for leave to amend its complaint.

IT IS, THEREFORE, BY THE COURT ORDERED that Adidas's motion to alter or amend judgment (Doc. 274) is denied.

---

2. Adidas argues that to deny it leave to amend its complaint would be "manifestly unjust" because the court's Scheduling Order (Doc. 227) provided that motions to amend the pleadings or to add parties would be filed after the court ruled on the then-pending motion for judgment on the pleadings. The NCAA rightly points out, however, that the Scheduling Order is "superseded" by the court's judgment. Clearly, that portion of the Scheduling Order was intended to apply only if the court were to deny the NCAA's motion for judgment on the pleadings.

Copies of this order shall be mailed to counsel of record.

**IT IS SO ORDERED.**